**BROWN & CONNERY, LLP**
William M. Tambussi, Esquire (ID No. 031431983)
Carmen Y. Day, Esquire (ID No. 318322020)
360 Haddon Avenue
Westmont, New Jersey 08108
(856) 854-8900
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MS. JASON SOUTH,<br><br>      Plaintiff,<br><br>  v.<br><br>CARL SCEUSA, MD/CCHP,<br>In his Official and Individual Capacities<br><br>      Defendant,<br><br>  -and-<br><br>FEDERAL BUREAU OF PRISONS,<br><br>      Defendant. | Case No.: 1:20-cv-09045-RBK-JS<br><br><br>**PLAINTIFF'S FIRST AMENDED<br>COMPLAINT AGAINST<br>CARL SCEUSA AND FEDERAL<br>BUREAU OF PRISONS** |

Plaintiff, Ms. Jason South, ("Plaintiff" or "Anna" and hereinafter referred to in the feminine at Plaintiff's request), an inmate presently confined at FCI Milan ("Milan"), in Milan, Michigan, by and through her attorneys, files this Complaint and states the following claims against Defendant, Carl Sceusa, MD/CCHP ("Defendant Sceusa"), in his official and individual capacities, and Defendant, Federal Bureau of Prisons ("BOP") (collectively "Defendants"):

**NATURE OF ACTION**

1. Plaintiff, a transgender female housed in a male correctional institution, brings this civil rights action under the Eighth Amendment to the United States

Constitution and 42 U.S.C. § 1983, seeking equitable relief and monetary damages against Defendants for the deprivation and mismanagement of Plaintiff's necessary medical treatment. Defendants' intentional actions caused Plaintiff severe physical, mental, and emotional anguish resulting in self-harm, delayed Plaintiff's male to female transition, and negatively impacted Plaintiff's ability to transfer to a female correctional facility. These acts have deprived Plaintiff of rights secured to her by the laws of the United States of America and the State of New Jersey.

## PARTIES

2. Plaintiff is a transgender female inmate presently confined at FCI Milan, a male correctional institution with its principal place of business at 4004 East Arkona Road, Milan, Michigan 48160.

3. Defendant, Carl Sceusa, MD/CHPP, is a medical doctor employed at or by FCI Fort Dix ("Fort Dix") with its principal place of business at 5756 Hartford & Pointville Road, Joint Base MDL, NJ 08640. Upon information and belief, Defendant Sceusa was Plaintiff's treating physician at BOP Health Services in Fort Dix prior to Plaintiff's transfer to Milan.

4. Defendant, Federal Bureau of Prisons, is a federal agency established within the Department of Justice with its principal place of business at 320 First Street, NW, Washington, DC 20534 and doing business in New Jersey. BOP is responsible for the custody and care of federal inmates, including inmates housed at FCI Fort Dix where Plaintiff was previously confined.

5. At all relevant times herein, Defendants were "persons" for purposes of 42 U.S.C. § 1983 and acted under color of law to deprive Plaintiff of her Constitutional rights, as set forth more fully below.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. § 1331.

7. This Court has personal jurisdiction over Defendants because Defendants are authorized to conduct business in the State of New Jersey, Defendants regularly conduct business in the State of New Jersey, Defendants have sufficient minimum contacts with the State of New Jersey, and/or a substantial portion of the events, omissions, and damages giving rise to the claims set forth herein occurred in the State of New Jersey.

8. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

9. This Court has supplemental jurisdiction over any New Jersey state law claims pursuant to 28 U.S.C. § 1367.

10. Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because a substantial portion of the events, omissions, and damages giving rise to the claims set forth herein occurred in the District of New Jersey.

## FACTUAL BACKGROUND

11. Anna is a male to female transgender prisoner. She has been in federal custody for fifteen years and housed in ten male correctional facilities.

12. Anna suffers from numerous disabilities, including but not limited to borderline personality disorder, bipolar disorder, panic disorder, depression, anxiety, and post-traumatic stress disorder and has a history of self-injury, suicidal ideation, and suicide attempt. BOP has prescribed Anna various medications to treat her disorders, including anti-depressants and pain medication.

13. Anna experienced a traumatic and unstable upbringing. Since childhood, Anna "always felt like a girl" and occasionally dressed as a female. 5/28/19 Psych. Report at 3. (Ex. A). As a young boy, she "wished she did not have a penis," and from then on, has persistently dealt with feelings of discomfort, depression, and aggression because she does not feel she is a male. Id.

14. In May 2019, while housed at FCI Danbury in Danbury, Connecticut, BOP Psychology Services diagnosed Anna with gender dysphoria ("GD") due to her "stated desire to be the opposite sex and persistent discomfort with [her] biological assigned sex." Id. BOP's Transgender Offender Manual ("TOM") lists gender dysphoria as a mental health diagnosis defined as a "strong and persistent cross-gender identification" that is "manifested by a stated desire to be the opposite sex and persistent discomfort with his or her biologically assigned sex." TOM (Ex. B) ¶ 2. GD is undisputedly a serious medical condition.

15. For transgender inmates diagnosed with gender dysphoria, BOP prescribes gender-affirming hormone therapy in accordance with the World Professional Association for Transgender Health Standards of Care ("WPATH SOC" or "SOC"). BOP Med. Mgmt. of Transgender Inmates Clinical Guide at 11. (Ex. C).

16. The WPATH SOC provide that "[p]eople who enter an institution on an appropriate regimen of hormone therapy should be continued on the same, or similar, therapies and monitored according to the SOC." WPATH SOC at 68 (Ex. D). Further, the SOC warn that the "consequences of abrupt withdrawal of hormones . . . when medically necessary include a high likelihood of negative outcomes such as surgical self-treatment by autocastration, depressed mood, dysphoria, and/or suicidality." Id.

17. After twelve months of successful use of hormone therapy, gender-affirming surgery, also known as sex reassignment surgery, may be recommended to treat individuals with gender dysphoria. BOP Med. Mgmt. of Transgender Inmates Clinical Guide at 19. (Ex. C). The WPATH SOC recognize that for many individuals suffering with gender dysphoria, sex reassignment surgery is "essential and medically necessary to alleviate their gender dysphoria." WPATH SOC at 54 (Ex. D).

18. Prior to the May 2018 changes to the TOM, BOP's Transgender Executive Council ("TEC") "recommend[ed] [inmate] housing by gender identity when appropriate." TOM (Ex. B) ¶ 5. As a result of the discriminatory policy changes against transgender individuals enacted by the Trump administration, BOP now uses "biological sex," as opposed to gender identity, as the initial determination for inmate housing designations. Id.

19. However, the WPATH SOC recommend that "[h]ousing and shower/bathroom facilities for transsexual, transgender, and gender nonconforming people living in institutions should take into account their gender identity and role, physical status, dignity, and personal safety." WPATH SOC at 68 (Ex. D). The SOC warn that placement in single-sex housing "on the sole basis of the external genitalia may not be appropriate and may place the individual at risk for victimization." Id. Thus, institutions where "transgender . . . people reside and receive health care should monitor for a tolerant and positive climate to ensure that residents are not under attack by staff or other residents." Id.

20. In or around November 2019, Anna was prescribed and began consuming 6 milligrams ("mg") of Estradiol Tablets, an estrogen hormone treatment taken daily to assist Anna's male to female transition and treat her GD.

21. In or around December 2019, Anna was transferred from FCI Danbury to Fort Dix following a sexual and physical assault against Anna by inmates at FCI Danbury.

22. Upon arrival at Fort Dix, Anna was screened and identified as a male to female transgender inmate in accordance with BOP's TOM. TOM (Ex. B) ¶ 8. The policies set forth in the TOM were created to ensure BOP "properly identifies, tracks, and provides services to the transgender population" confined in federal prisons. Id. ¶ 1.

23. While confined at Fort Dix, Anna continued receiving 6 mg of Estradiol Tablets to facilitate her transition and treat her GD. In addition to the hormone treatment, Anna continued taking her previously prescribed medications, including anti-depressants.

24. In or around March 2020, Anna was sexually harassed by two inmates at Fort Dix, including Anna's cellmate. Thereafter, Anna followed BOP's Administrative

Remedy Program to report the sexual harassment. Ultimately, Anna filed a Central Office Administrative Remedy Appeal ("Appeal") related to the sexual harassment. As a form of relief, Anna requested transfer to a female facility with the Resolve Program, a national trauma treatment program designed for inmates with a mental health diagnosis.

25. On April 23, 2020, Defendant Sceusa discontinued Anna's standing order for 6 mg daily of Estradiol and submitted a new medical order ("April Med. Order") abruptly reducing Anna's Estradiol treatment from 6 mg to 2 mg daily. April Med. Order (Ex. E). Despite acknowledging Plaintiff's gender dysphoria diagnosis, Defendant Sceusa reduced Plaintiff's hormone treatment because her "[r]ecent [l]abs reveal[ed] very [h]igh [e]strogen [l]evel and [v]ery [l]ow [t]estosterone [l]evel." Id.

26. On May 18, 2020, Anna received a Suicide Risk Assessment ("SRA") after she was removed from her unit for "acting out" and "throwing a fit" following a disagreement with another inmate. 5/18/20 SRA at 1 (Ex. F). While being assessed by Psychology Services for potential suicidal ideation, Anna, crying and visibly upset from the incident, was informed that incident reports would be filed against her and that she was being sent to the Special Housing Unit ("SHU") as a result of her actions in the unit. Id. at 3-4. Finding out she would be placed in the SHU exacerbated Anna's distress, and she responded by attempting to stab herself in the leg with a mechanical pencil. Id. at 4.

27. Immediately thereafter, Anna was placed on suicide watch. Id. While on suicide watch, Anna threatened to hang herself, expressed a desire to have her male genitals cut off, banged her head on the wall causing it to bleed, tied a blanket around her neck and

attempted to tighten it, and cut her wrist using a damaged mesh wall in the suicide watch cell. Id.

28. On May 18, 2020, in accordance with BOP's Administrative Remedy Program, Anna informally complained to Psychology Services that she believed her missed hormone treatments contributed to her negative behavior. Id. Anna further stated that she believed BOP was trying to prevent her from transitioning. Id.

29. On May 19, 2020, one day after Anna's suicide attempt, Defendant Sceusa readjusted Anna's Estradiol Tablet prescription from 2 mg back to 6 mg. May Med. Order (Ex. G). The same day, while on suicide watch, Anna engaged in head banging causing her head to bleed.

30. On May 20, 2020, Anna was transported to Robert Wood Johnson University Hospital Hamilton to rule out trauma from the head banging incident. During transport, Anna tied a seatbelt around her neck and attempted to hang herself. At the hospital, she received a diagnosis for "attempted asphyxiation" and "suicide attempt." RWJ Discharge Instructions (Ex. H).

31. On May 22, 2020, BOP's National Inmate Appeals Administrator issued an Administrative Remedy Response ("Response") addressing Anna's sexual harassment complaint and her hormone medication issue. Admin. Response (Ex. I). The Response notified Anna that the Transgender Executive Council denied her request for transfer to a female facility because Anna's placement in a male facility was appropriate based on factors set forth in the TOM. Id. In addition, the Response stated that Anna's most recent laboratory results indicated her hormone levels had not been "maximized or stabilized."

Id. As such, the Response stated her "medications were adjusted and hormone levels [would] continue to be monitored by Health Services staff at the institution." Id. Given the unfavorable and insufficient Response from BOP's National Inmate Appeals Administrator, Anna exhausted the administrative remedies available to her at the BOP.

32. On June 4, 2020, Anna spoke with Psychology Services during a suicide watch contact ("SWC"). 6/4/20 SWC at 1 (Ex. J). She reported that she was unable to recall the events alleged in her incident reports and that she was experiencing hallucinations, nausea, and excessive sweating. She also requested a test for sexually transmitted diseases and reported that she was denied prophylaxis, a disease prevention medication. Id.

33. On June 8, 2020, Anna was seen again by Defendant Sceusa. June Med. Order (Ex. K). In addition to referring to Anna in the male pronoun against her wishes, Defendant Sceusa noted that Anna requested "prophylactic medication for sexual encounter" during her visit in April, but that "[h]e didn't mention this nor had this on his list of concerns in today's encounter[.]" Id. Defendant Sceusa did not offer Anna prophylactic treatment during this visit and failed to indicate why Anna's request for same was denied in April. Id.

34. On June 8, 2020, Anna was removed from suicide watch and transferred to the SHU.

35. On June 10, 2020, Anna advised Psychology Services that she had not received her pill line medication since entering the SHU three days prior. 6/10/20 Psych. Report (Ex. L). Anna also indicated that her transfer to a female facility was denied partly because of her recent suicide watch status, which indicated a lack of mental stability. Id.

36. In July 2020, Plaintiff filed this civil rights action seeking transfer to a female facility with the Resolve Program.

37. In or around August 2020, Plaintiff was transferred from Fort Dix to Milan.

38. On February 17, 2021, while housed at Milan, Anna was scheduled to have her hormone levels reexamined. While at the lab and just moments before she had her blood drawn, Anna was advised by the technician that her lab order had been cancelled. She was further advised that the TEC recommended her Estradiol prescription be raised from 6 mg to 8 mg, and that her hormone levels would be reexamined in three months, in or around May 2021. Additionally, Anna was asked to have her hormone treatment administered at the pill line window, as opposed to it being a "self-carry" medication as it had been since Anna started taking hormones in 2019.

39. While in BOP custody, Anna has continued to receive inconsistent and inadequate medical treatment for her GD.

40. Continued housing in a male facility, against the recommendations of the WPATH SOC, places Anna at further risk for victimization and life-threatening self-harm from lack of proper treatment for her gender dysphoria. Pursuant to the SOC, Anna's gender dysphoria can be alleviated with continued hormone therapy, sex reassignment surgery, and transfer to a female facility.

## COUNT I – CRUEL AND UNSUAL PUNISHMENT – EIGHTH AMENDMENT
(Carl Sceusa)

41. Plaintiff incorporates each of the allegations in the preceding paragraphs as if fully set forth herein.

42. Plaintiff has a serious medical need for treatment due to her gender dysphoria and other disabilities.

43. Defendant Sceusa knew of Plaintiff's medical conditions, including her required treatment for gender dysphoria and her male to female transition, and knew of the substantial risk to Plaintiff's physical, mental, and emotional health that would result from the abrupt changes to Plaintiff's hormone medications and failure to properly treat her GD.

44. Despite Defendant Sceusa's knowledge of these substantial risks to Plaintiff, Defendant Sceusa intentionally decreased Plaintiff's Estradiol medication before her hormone levels were maximized, thereby preventing Plaintiff from receiving the medical treatment necessary to treat Plaintiff's gender dysphoria and facilitate her transition.

45. Defendant Sceusa was deliberately indifferent to Plaintiff's serious medical needs when he intentionally interfered with Plaintiff's standing medical order for hormone treatments and failed to properly treat her GD, causing Plaintiff unnecessary physical, mental, and emotional distress resulting in self-harm and delaying her transition and transfer to a female facility.

**WHEREFORE**, Plaintiff, Ms. Jason South, demands judgment against Defendant, Carl Sceusa, for expungement of her inmate records related to the suicide incidents, gender-affirming surgery, expedited transfer to a BOP female facility with the Resolve Program, compensatory damages, punitive damages, attorney's fees and costs of suit, and any other relief that the Court deems equitable and just.

## COUNT II – DISCRIMINATION UNDER THE AFFORDABLE CARE ACT
**(Carl Sceusa)**

46. Plaintiff incorporates each of the allegations in the preceding paragraphs as if fully set forth herein.

47. BOP has a record of Plaintiff's gender dysphoria. Gender dysphoria is a mental impairment that substantially limits Plaintiff's major life activities, including but not limited to, caring for herself, thinking, and communicating. Plaintiff is also regarded as having gender dysphoria. Therefore, Plaintiff is a qualified individual with a disability.

48. Defendant Sceusa denied Plaintiff proper treatment from BOP's Health Services, a program that receives federal financial assistance and provides medical treatment to inmates confined at BOP. Plaintiff was denied the benefit of receiving the maximum Estradiol medication prescription to treat her gender dysphoria.

49. Defendant Sceusa reduced Plaintiff's Estradiol prescription because her estrogen levels were "very high." Plaintiff's estrogen level was appropriately high due to her ongoing treatment for gender dysphoria. Therefore, Plaintiff was denied proper medical treatment solely by reason of her disability.

50. As a result of Defendant Sceusa's actions, Plaintiff's rights as a person with a disability were violated under the Affordable Care Act.

**WHEREFORE**, Plaintiff, Ms. Jason South, demands judgment against Defendant, Carl Sceusa, for expungement of her inmate records related to the suicide incidents, gender-affirming surgery, expedited transfer to a BOP female facility with the Resolve Program, compensatory damages, punitive damages, attorney's fees and costs of suit, and any other relief that the Court deems equitable and just.

## COUNT III – VIOLATION OF REHABILIATION ACT OF 1973
### (BOP)

51. Plaintiff incorporates each of the allegations in the preceding paragraphs as if fully set forth herein

52. Defendant Sceusa operated in his official capacity as a physician for BOP's Health Services when he denied Plaintiff the benefit of receiving the maximum Estradiol medication prescription to treat her gender dysphoria.

53. As a result of its employee's actions, BOP violated Plaintiff's rights as a person with a disability under the Rehabilitation Act.

**WHEREFORE**, Plaintiff, Ms. Jason South, demands judgment against Defendant, Federal Bureau of Prisons, for expungement of her inmate records related to the suicide incidents, gender-affirming surgery, expedited transfer to a BOP female facility with the Resolve Program, compensatory damages, punitive damages, attorney's fees and costs of suit, and any other relief that the Court deems equitable and just.

## DESIGNATION OF TRIAL COUNSEL

William M. Tambussi, Esquire is hereby designated as trial counsel for Plaintiff in the above-captioned matter on all claims.

**BROWN & CONNERY, LLP**
Westmont, NJ 08108

## **JURY DEMAND**

Plaintiff hereby demands a non-jury trial in the above-captioned matter on all claims.

                                                     **BROWN & CONNERY, LLP**

Dated:  October 26, 2021                    By:  s/ *Carmen Y. Day*
                                                         William M. Tambussi, Esquire
                                                         Carmen Y. Day, Esquire
                                                          360 Haddon Avenue
                                                          Westmont, New Jersey 08108
                                                          Phone: (856) 854-8900
                                                          Fax: (856) 858-4967
                                                          Email: wtambussi@brownconnery.com
                                                          Email: cday@brownconnery.com
                                                          *Attorneys for Plaintiff*

## CERTIFICATION PURSUANT TO LOCAL RULE 11.2

I hereby certify that the matter in controversy in this action is not the subject of any other action pending or contemplated in any court, or of any pending or contemplated arbitration or administrative proceeding. I further certify that there are no additional known parties who should be joined in the present action at this time.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I may be subject to punishment.

**BROWN & CONNERY, LLP**

Dated:  October 26, 2021    By:  s/ *William M. Tambussi*
                                  William M. Tambussi, Esquire

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I caused a true and correct copy of the foregoing First Amended Complaint to be filed and served, in the manner indicated below, to the following:

Clerk
**United States District Court for the District of New Jersey**
Mitchell H. Cohen Building & U.S. Courthouse
1 John F. Gerry Plaza
Fourth and Cooper Streets
Camden, New Jersey 08101
(*Via electronic filing*)

Honorable Matthew J. Skahill, U.S.D.J.
**United States District Court for the District of New Jersey**
Mitchell H. Cohen Building & U.S. Courthouse
1 John F. Gerry Plaza
Fourth and Cooper Streets
Camden, New Jersey 08101
(*Via hand delivery – courtesy copy*)

Carl Sceusa, MD/CHPP
FCI Fort Dix
5756 Hartford & Pointville Road
Joint Base MDL, NJ 08640

Federal Bureau of Prisons
320 First Street, NW
Washington, DC 20534

Darrin Howard, Regional Counsel
Northeast Regional Office
U.S. Customs House – 7th Floor
2nd and Chestnut Streets
Philadelphia, PA 19106

Rachel A. Honig, Acting U.S. Attorney
U.S. Attorney's Office
970 Broad Street, 7th Floor
Newark, NJ 07102

**BROWN & CONNERY, LLP**
**Westmont, NJ 08108**

16

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I may be subject to punishment.

                                              **BROWN & CONNERY, LLP**

Dated:  October 26, 2021          By:  s/ *Carmen Y. Day*
                                                 Carmen Y. Day, Esquire