UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MS. JASON SOUTH, a/k/a Anna,

    Plaintiff,

v.

FEDERAL BUREAU OF PRISONS, et al.,

    Defendants.

Civ. No. 20-9045 (RBK) (MJS)

**OPINION**

**ROBERT B. KUGLER, U.S.D.J.**

    **I.    INTRODUCTION**

Plaintiff[1] is a federal prisoner proceeding through counsel with an amended civil rights complaint. (*See* ECF 24). Presently pending before this Court is Defendants', the Federal Bureau of Prisons' ("BOP") and Dr. Carl Sceusa's, motion to dismiss the amended complaint. For the following reasons, Defendants' motion to dismiss is granted.

    **II.    FACTUAL AND PROCEDURAL BACKGROUND**

The allegations of the amended complaint are construed as true for purposes of deciding Defendants' motion to dismiss. Plaintiff is a transgender female and federal prisoner. (*See* ECF 24 ¶ 1-2). She sues the BOP and Sceusa, who is a medical doctor employed at F.C.I. Fort Dix, in Fort Dix, New Jersey. (*See id.* ¶ 3-4).

Plaintiff has been incarcerated at federal facilities for several years. (*See id.* ¶ 11). Plaintiff suffers from numerous afflictions, including borderline personality disorder, bipolar disorder, depression, anxiety, and post-traumatic stress disorder. (*See id.* ¶ 12). In 2019, BOP psychology services diagnosed Plaintiff with gender dysphoria ("GD") due to her desire to be the

---

[1] Plaintiff is a transgender female. For purposes of this opinion, this Court will use Plaintiff's preferred use of pronouns as she/her.

opposite sex as well as due to her persistent discomfort with her biological assigned sex. (*See id.* ¶ 14). In November, 2019, Plaintiff was prescribed 6 milligrams of Estradiol daily to assist with her transition from male to female and to help with her GD diagnosis. (*See id.* ¶ 20). In December, 2019, Plaintiff was transferred from F.C.I. Danbury in Connecticut to F.C.I. Fort Dix in New Jersey. (*See id.* ¶ 21).

Initially, Plaintiff continued her regiment of prescribed Estradiol when arriving at F.C.I. Fort Dix as well as other medications, which included anti-depressants. (*See id.* ¶ 23). On April 23, 2020, however, Sceusa reduced Plaintiff's Estradiol daily treatment from 6 milligrams to 2 milligrams noting that her recent labs revealed high levels of estrogen and very low levels of testosterone. (*See id.* ¶ 25).

On or about May 18, 2020, Plaintiff was removed from her unit for "acting out" and "throwing a fit." (*See id.* ¶ 26). She was given a suicide risk assessment ("SRA") and told she would be placed in the special housing unit ("SHU"). (*See id.*). Plaintiff responded by attempting to stab herself in the leg with a mechanical pencil. (*See id.*). Plaintiff was then placed on suicide watch during which she threatened to hang herself, expressed a desire to cut off her male genitals, banged her head on the wall, tied a blanket around her neck and attempted to tighten it and cut her wrist. (*See id.* ¶ 27). Plaintiff then informally complained to psychology services on May 18, 2020 that she believed her missed hormone treatments contributed to her recent behavior. (*See id.* ¶ 28). On May 19, 2020, Sceusa readjusted Plaintiff's Estradiol treatment back to 6 milligrams daily. (*See id.* ¶ 29). In August, 2020, Plaintiff was transferred from F.C.I. Fort Dix to a federal prison in Michigan where she still resides. (*See id.* ¶ 37).

In February, 2021, Plaintiff's Estradiol prescription was raised to 8 milligrams daily. (*See id.* ¶ 38). Plaintiff states that her GD can be alleviated with continued hormone therapy, sex reassignment surgery and a transfer to a female facility. (*See id.* ¶ 30).

Plaintiff brings three claims in her amended complaint. First, she asserts Sceusa is liable under the Eighth Amendment pursuant to *Bivens v. Six Unknown Named Agents of Fed. Narcotics*, 403 U.S. 388 (1971) for violating her right to be free from cruel and unusual punishment ("Count I"). (*See id.* ¶¶ 41-45). She claims Sceusa knew of her required treatment for GD but acted with deliberate indifference to her serious medical needs when he intentionally interfered with her hormone treatments. (*See id.* ¶¶ 43-45).

In Plaintiff's second claim, she sues Sceusa for discrimination under the Affordable Care Act ("ACA") ("Count II"). (*See id.* ¶ 47-50). Plaintiff states her GD is a disability and that she was improperly denied proper medical treatment by Sceusa because of her disability. (*See id.*).

Finally, in her third claim, Plaintiff alleges the BOP has violated the Rehabilitation Act of 1973 ("Count III"). (*See id.* ¶¶ 51-53). Plaintiff states that Sceusa operated in his official capacity as a physician for BOP and because of his actions, the BOP violated Plaintiff's rights as a person with a disability under the Rehabilitation Act. (*See id.*).

Defendants filed a motion to dismiss the amended complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* ECF 35). They make four arguments which are as follows:

1. Plaintiff failed to exhaust administrative remedies such that Count I should be dismissed;
2. *Bivens* should not be extended to the claim Plaintiff raises in Count I against Sceusa;
3. Count I against Sceusa should be dismissed because Sceusa is entitled to qualified immunity; and

4. Plaintiff's claims under the ACA and the Rehabilitation Act should be dismissed.

Plaintiff opposes Defendants' motion to dismiss. (*See* ECF 54). Defendants filed a reply brief in support of their motion. (*See* ECF 57).

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss under Rule 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Iqbal*, 556 U.S. at 678. This "plausibility standard" requires that the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is 'not akin to a probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pleaded; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common

4

sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light* Co., 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

A court conducts a three-part analysis in analyzing a motion to dismiss pursuant to Rule 12(b)(6). *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.*

## IV. DISCUSSION

### A. Count I – Sceusa's Qualified Immunity

This Court will first analyze Sceusa's argument that he is entitled to qualified immunity on Plaintiff's Eighth Amendment claim asserting he was deliberately indifferent to her serious medical needs. Qualified immunity protects officials who violate a plaintiff's federally protected right, so long as the right was not clearly established by law. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Whether government officials can assert qualified immunity is resolved by a two-part test: (1) whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right and, if so; (2) whether the right at issue was "clearly established" at the time

of the defendant's alleged misconduct. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Walker v. Coffey*, 905 F.3d 138, 144 (3d Cir. 2018) (footnotes omitted).

"[T]he clearly established right must be defined with specificity." *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019). Thus, "[a] clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015) (internal quotation marks and citation omitted). Qualified immunity is designed to allow government officials to make reasonable judgments, even if they are mistaken, about open legal questions. It is intended to protect "all but the plainly incompetent or those who knowingly violate the law." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). Qualified immunity has been defined as a "fair warning" standard by the Supreme Court, meaning that if the federal right is clearly established, the official is sufficiently on notice and may be held monetarily liable. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Qualified immunity "will attach if the official can demonstrate his conduct was 'objectively reasonable.'" *Davis v. Malitzki*, 451 F. App'x 228, 232 (3d Cir. 2011).

> For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Hope*, 536 U.S. at 739 (internal citation and quotation marks omitted). While there is no need for a "case directly on point . . . existing precedent must have placed the statutory or constitutional question beyond debate," and the "violative nature of particular conduct" must not be defined at a "high level of generality." *See Ashcroft v. Al-Kidd*, 563 U.S. 731, 741-42 (2011). To determine whether a right is clearly established, "we look first for 'applicable Supreme Court precedent.' If

6

none exists, we consider whether there is a case of controlling authority in our jurisdiction or a 'robust consensus of cases of persuasive authority in the Courts of Appeals that could clearly establish a right for purposes of qualified immunity.'" *Barna v. Bd. of Sch. Dirs. of the Panther Valley Sch. Dist.*, 877 F.3d 136, 142 (3d Cir. 2017) (internal citation omitted) (citing *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016)).

The Supreme Court has recognized, *in limited situations*, a private cause of action against federal officials. *See Bivens*, 403 U.S. at 389; *see also Bistrian v. Levi*, 912 F.3d 79, 88 (3d Cir. 2018) (stating "*Bivens* is the short-hand name given to causes of action against federal officials for alleged constitutional violations."). "In order to state a claim under *Bivens*, a claimant must show: (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law." *Doty v. United States*, Civ. No. 15-3016, 2016 WL 3398579, at *6 (D. N.J. June 15, 2016) (citations omitted).

*Bivens* permits a damages remedy "to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). The Supreme Court has extended *Bivens* to only a few other limited constitutional violations. *See id.* For example, in *Davis v. Passman*, 442 U.S. 228 (1979), the Supreme Court held that the Fifth Amendment Due Process Clause gave an administrative assistant a damages remedy against a Congressman for firing her due to gender. *See Ziglar*, 137 S. Ct. at 1854. In *Carlson v. Green*, 446 U.S. 14 (1980), the Supreme Court held the Eighth Amendment gave a prisoner's estate a damages remedy against prison officials for failing to provide adequate medical treatment. *See Ziglar*, 137 S. Ct. at 1855; *see also Dongarra v. Smith*,

27 F.4th 174, 180 (3d Cir. 2022) (noting the Supreme Court has only recognized implied causes of action in *Bivens*, *Davis* and *Carlson*).

Defendants argue Plaintiff's claim in Count I does not fall within *Bivens* purview. *For purposes of this opinion only* and solely to first analyze Defendant's qualified immunity argument, this Court will assume that Count I falls within *Bivens*' purview.

> For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). We have found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)). Allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Estelle v. Gamble*, 429 U.S. 97, 105-06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

*Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013). Deliberate indifference can also be found "where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury." *See McCluskey v. Vincent*, 505 F. App'x 199, 202 (3d Cir. 2012) (internal quotation marks and citation omitted). "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize

8

the necessity for a doctor's attention.'" *See Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (quoting *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987))). Negligence though is insufficient to support an Eighth Amendment deliberate indifference claim. *See Castro v. United States*, 448 F. App'x 167, 169 (3d Cir. 2011) (citing *Rouse*, 182 F.3d at 197).

As to the first prong of the qualified immunity analysis, Plaintiff argues that Sceusa's change in her hormone treatments caused her to engage in self-harm and a suicide attempt. (*See* ECF 54 at 23). Thus, according to Plaintiff, "these facts . . . [have] established a constitutional violation." (*See id.*). Sceusa disagrees. Instead, Sceusa argues that Plaintiff's allegations against Sceusa for temporarily changing the dosage of her Estradiol medication does not rise to the level of deliberate indifference.

To reiterate the allegations of the amended complaint, in November, 2019, while at F.C.I. Danbury, Plaintiff was placed on 6 mg of Estradiol. In December, 2019, she was transferred to F.C.I. Fort Dix in New Jersey. Plaintiff states in her amended complaint that upon arriving at F.C.I. Fort Dix she was screened and identified as a male to female transgender inmate. She then continued to receive her 6 mg of Estriadiol as well as her previously prescribed medications which included anti-depressants. Five months after arriving at F.C.I. Fort Dix, on April 23, 2020, Sceusa, who recognized Plaintiff's GD diagnosis, reduced her hormone treatment to 2 mg daily because of lab results. (*See* ECF ¶ 25). The next incident in the timeline alleged in the amended complaint is that Plaintiff received a SRA after "acting out" and "throwing a fit" following a disagreement with another inmate on May 18, 2020. (*See* ECF 24 ¶ 26). Plaintiff was then told she would be placed in the SHU whereby Plaintiff attempted to stab herself in the leg with a pencil. (*See id.*). Plaintiff was then placed on suicide watch, threatened to cut off her genitals and

9

banged her head against the wall and tied a blanket against her neck, tightened it as well as cut her wrist. (*See id.* ¶ 27).

That same day, Plaintiff complained to psychology services that she thought her actions were based on her "missed hormone treatments." (*See id.* ¶ 28). *The next day*, Sceusa readjusted Plaintiff's Estradiol treatments back to 6 mg daily. (*See id.* ¶ 29). The next allegations in the amended complaint related to Sceusa state that on June 8, 2020, Sceusa referred to Plaintiff using a male pronoun and that, despite Plaintiff requesting a "prophylactic medication for a sexual encounter" during a visit in April, "Scesua did not offer [Plaintiff] a prophylactic treatment[.]" (*See id.* ¶ 33). Plaintiff was then transferred to a Michigan federal institution in August, 2020. (*See id.* ¶ 37).

Sceusa's actions in this case as alleged do not rise to the level of deliberate indifference. He noted on April 23, 2020 that Plaintiff had GD, but her labs indicated very high levels of estrogen and very low testosterone levels. (*See* ECF 24-1 at 68). He then lowered Plaintiff's Estrodial dosage. The BOP's own guidelines for transgender inmates note this may occur. (*See* ECF 24-1 at 39). However, once Plaintiff complained about how this change in dosage was affecting her mentally a few weeks later, he immediately raised the dosage back to 6 milligrams per day. While *perhaps* Sceusa's actions in temporarily changing Plaintiff's dosage could be seen as negligence, such actions as alleged do not rise to the level of deliberate indifference. *See, e.g.*, *Korn v. Marrero*, No. 15-338, 2016 WL 3676395, at *4 (E.D. Ky. July 7, 2016) (prisoner's "mere disagreement with the dosage of methadone, a potentially-addictive opiod pain medication, is insufficient to indicate deliberate indifference to his medical needs" where prisoner was prescribed lower dosage of methadone and "numerous other medications ... to address a plethora of health conditions"); *Tuck v. Maiorana*, No. 15–2556, 2016 WL 3469945, at

\*3 (W.D. La. Apr. 26, 2016) (recommending dismissal of *Bivens* claim where plaintiff's "complaint shows that he received a massive amount medical treatment, albeit not to his liking or in his preferred time frame," and merely "state[s] a disagreement with the medical staff regarding the procedures necessary to treat his medical issues"), *report and recommendation adopted*, 2016 WL 3466917 (W.D. La. June 21, 2016). Thus, Sceusa is entitled to qualified immunity on Count I of the amended complaint based on the first prong of this qualified immunity analysis.

Similarly, Sceusa is also entitled to qualified immunity based on second prong as well. The cases that Plaintiff relies on to show that her right to a specific dosage of hormone therapy are either factually distinguishable or not relevant to this analysis. For example, *Endo v. Corizon, Inc.*, 935 F.3d 757, 767 (9th Cir. 2019) involved a male-to-female transgender state inmate. In that case, the parties agreed that Endo suffered from GD. *See id.* Edmo had twice attempted self-castration to remove her male genitalia. (*See id.*). Both sides agreed that in certain circumstances, gender confirmation surgery ("GCS") could be a medically necessary treatment for GD, but disputed whether GCS was medical necessary for Edmo. *See id.* Ultimately, the Ninth Circuit held that GCS was medically necessary for Endo. *See id.* at 787.

*Edmo* is distinguishable on its facts as it relates to Sceusa. Indeed, Plaintiff's amended complaint against Sceusa relates not to any actions by him related to possible GCS surgery, but upon making a medical decision to lower the dosage of her hormone therapy. Then, upon learning about the impact and side affects the change in dosage of her medication was having on Plaintiff mentally once she described them to the psychology department, Sceusa immediately changed her prescription back to its original dosage.

11

Plaintiff's reliance on *Guthrie v. Wetzel*, No. 20-2351, 2021 WL 6495053 (M.D. Pa. Dec. 13, 2021), *report and recommendation adopted by*, 2022 WL 122372 (M.D. Pa. Jan. 12, 2022) to overcome Sceusa's qualified immunity argument is also misplaced. As Defendants note, *Guthrie* was decided over eighteen months after Sceusa's actions at issue in this case in April/May 2020. As it was decided well after Sceusa's actions in this case, it not appropriate to support Plaintiff's argument against qualified immunity. *See, e.g.*, *Lichtenstein v. Lower Merion Sch. Dist.*, 316 F. Supp. 3d 855, 873 n.8 (E.D. Pa. 2018); *see also Sykes v. Carroll*, 477 F. App'x 861, 864 (3d Cir. 2012) (noting decision that post-dated defendant's conduct cannot itself be cause for abrogating qualified immunity).

Additionally, to the extent *Guthrie* is relevant to this analysis, it is factually distinguishable. In that case, the plaintiff alleged the Defendants were deliberately indifferent to her serious medical needs by denying requests for access to a gender specialist, hair removal, gender affirming surgery, female commissary items, and a transfer to a woman's prison. *See Guthrie*, 2021 WL 6495053, at *8. However, Plaintiff's alleged facts, as they relate specifically and only to Sceusa are far different in that it only related to a reduction in Plaintiff's medication, a reduction that was immediately changed upon Plaintiff's complaint as to its effects on her mental state.

Thus, for these reasons, Sceusa is entitled to qualified immunity on Count I of the amended complaint.[2] Because of this finding, this Court need not engage in Sceusa's alternative arguments for dismissal of Count I. Out of the abundance of caution though, in the event that

---

[2] This Court notes that qualified immunity applies only to Plaintiff's individual capacity claims against Sceusa. Nevertheless, given Plaintiff's failure to allege an underlying constitutional violation against Sceusa, any official capacity claims against him under Count I also fail to state a claim.

Plaintiff can pled other or additional facts against Sceusa, the dismissal of Count I will be without prejudice.

B. <u>ACA Claim Against Sceusa in Individual Capacity – Count II</u>

In Count II, Plaintiff sues Sceusa under the ACA. Section 1557 of the ACA provides for nondiscrimination in healthcare. More specifically, it states as follows:

> Except as otherwise provided for in this title (or an amendment by this title), an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, or section 794 of Title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments).

42 U.S.C. § 18116(a) (internal citations omitted). Further, Section 1557 incorporates "[t]he enforcement mechanisms provided for and available under such title VI, title IX, section 794, or such Age Discrimination Act" to address ACA discrimination violations. *See* 42 U.S.C. § 18116(a). Title IX states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Similarly, Section 504 of the Rehabilitation Act proclaims: "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Those statutes imply a private right of action. See *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005) (citing *Cannon v. Univ. of Chi.*, 441 U.S. 677, 690–693 (1979)) (Title IX); *Fowler*, 578 F.3d at

207 n.2 (citing *Three Rivers Ctr. for Indep. Living, Inc. v. Hous. Auth. of Pittsburgh*, 382 F.3d 412, 425-26 (3d Cir. 2004)). The ACA therefore implies a private right of action through its incorporation of Title IX and the Rehabilitation Act. *See, e.g., SEPTA v. Gilead Scis., Inc.*, 102 F. Supp. 3d 688, 698 (E.D. Pa. 2015) (finding private right of action under ACA).

As Defendants correctly note, however, employees of federal funded entities are not subject to individual liability under this provision of the ACA. *See, e.g.*, *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002) ("Because the individual defendants do not receive federal aid, Emerson does not state a claim against them under the Rehabilitation Act."). Thus, parties cannot be held liable in their individual capacities under § 504 of the Rehabilitation Act. *See A. W. v. Jersey City Public Schools*, 486 F.3d 791, 804 (3d Cir. 2007) ("Suits may be brought pursuant to [the Rehabilitation Act] against recipients of federal assistance, but not against individuals."); *accord Doe v. DeJoy*, 2020 WL 4382010, at *11 (E.D. Pa. July 31, 2020) (holding that there is no individual liability under the Rehabilitation Act and citing authority). Therefore, it follows Plaintiff's ACA claim against Sceusa in Count II in his individual capacity is dismissed with prejudice.

C. <u>ACA Official Capacity Claim Against Sceusa – Count II; Rehabilitation Act Claim Against BOP – Count III</u>

Accordingly, remaining in this case are Plaintiff's ACA claim against Sceusa in his official capacity in Count II and Plaintiff's Rehabilitation Act claim against the BOP in Count III. Plaintiff asserts Defendants are liable under both statutes because of Sceusa's actions regarding the reduction of her Estradiol treatment. According to Plaintiff, because of Sceusa's action, her rights as a person with a disability were violated under both Acts.

Defendants though argue in part that Plaintiff:

14

>was not precluded from participating in any program, service, or activity, or otherwise subject to discrimination by reason of a disability. Rather, the medical recommendations regarding Plaintiff's hormone therapy were made based on a multifactored treatment plan which included laboratory analysis to ensure plaintiff's hormone levels were within an appropriate range.

(ECF 35-1 at 37).

Plaintiff's remaining nondiscrimination claims under the ACA and the Rehabilitation Act are subject to the same analysis. *See Brown v. United States*, No. 21-829, 2023 WL 2428838, at *4 (D. Del. Mar. 9, 2023) (citing *Francois v. Our Lady of the Lake Hospital, Inc.*, 8 F.4th 370, 378 (5th Cir. 2021) (citing *Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235, 239 (6th Cir. 2019)). To state such a claim under either statute, a plaintiff must establish that "[1] [s]he is a qualified individual with a disability, [2] who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, [3] by reason of his disability." *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 288-89 (3d Cir. 2019); *see also Chambers v. School Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009). "Access to prescription medications is part of a prison's medical services and thus is one of the 'services, programs, or activities' covered by the ADA." *Graham v. Pennsylvania Dep't of Corr.,* No. 21-146, 2022 WL 2276580, at *7 (W.D. Pa. Apr. 5, 2022), *report and recommendation adopted*, 2022 WL 2275490 (W.D. Pa. June 23, 2022) (citing *Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 287 (1st Cir. 2006) (citing *U.S. v. Georgia*, 546 U.S. 151, 157 (2006))). Nevertheless, a claim based on improper medical treatment and medical decisions do not fall within the scope of either's Acts nondiscrimination protections. *See Perry v. Meir*, No. 22-1699, 2022 WL 1720016, at *1 n.2 (E.D. Pa. May 27, 2022) (citing *Shelton v. Arkansas Dep't of Hum. Servs.*, 677 F.3d 837, 843 (8th Cir. 2012); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005)) (other citations omitted). Accordingly, mere claims of negligence are insufficient to

15

sustain an ACA or Rehabilitation Act claim. *See, e.g.*, *D.N. Louisa Ct'y Public Schools*, 156 F. Supp. 767, 776 (W.D. Va. July 13, 2016) (citations omitted).

As previously noted, Sceusa's actions here at most amount to negligence. Given this, Plaintiff fails to state a ACA or Rehabilitation Act claim related to Sceusa's actions. *See, e.g.*, *Johnson v. Tritt*, No. 18-203, 2021 WL 2550207, at *19 (M.D. Pa. June 22, 2021) (noting negligence is insufficient to sustain Rehabilitation Act claim and finding no Rehabilitation Act violation when there was no deliberate indifference). This Court finds *Graham v. Pa. Dep't of Corr.*, No. 21-146, 2022 WL 22766580 (W.D. Pa. April. 5, 2022), *report and recommendation adopted by*, 2022 WL 2275490 (W.D. Pa. June 23, 2022) instructive and distinguishable on its facts. That case involved a plaintiff who also suffered from GD. *See Graham*, 2022 WL 2276580, at *1. In that case though, Plaintiff was not provided with her hormone replacement therapy ("HRT") prescribed medication for a period despite numerous requests. Ultimately, the Western District of Pennsylvania denied defendants motion to dismiss Plaintiff's Rehabilitation Act claim, noting that Graham was pleading that the defendants refused to provide her with her prescribed medication. This took Graham's allegations out of the "medical judgment" context, and into an outright denial of medical services context according to the Western District of Pennsylvania. *See id.* at *8.

Unlike the plaintiff *Graham*, however, the allegations in the amended complaint in this case amounts to one of medical judgment, as opposed to an outright denial of medical services. Plaintiff does not allege that Sceusa denied her prescribed medication, rather, he altered the dosage to a lower level. Thus, dismissal of Plaintiff's ACA and Rehabilitation Act claims is proper as this case involves medical judgment as opposed to an outright denial of medical services. Nevertheless, out of the abundance of caution, this Court will dismiss Plaintiff's claim

against Sceusa in his official capacity in Count II without prejudice and dismiss Plaintiff's Rehabilitation Act claim against the BOP in Count III without prejudice.[3]

## V. CONCLUSION

For the following reasons, Defendants' motion to dismiss is granted. Count I of the amended complaint is dismissed without prejudice due to qualified immunity. Plaintiff's claim against Sceusa in Count II of the amended complaint in his individual capacity is dismissed with prejudice. Plaintiff's claim against Sceusa in Count II of the amended complaint in his official capacity is dismissed without prejudice as is Plaintiff's claim in Count III of the amended complaint against the BOP. An appropriate order will be entered.

DATED: June 27, 2023                                s/ Robert B. Kugler
                                                    ROBERT B. KUGLER
                                                    United States District Judge

---

[3] Given this holding, this Court need not consider Defendants other arguments, including whether GD constitutes a disability under either the ACA or the Rehabilitation Act.